JAMES DOYLE, administrator, vs. FITCHBURG RAILROAD
COMPANY.

Suffolk.    March 23, 1896. — September 2, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Railroad — Ticket given to Employee living in one Place and working in another
on Road — Gratuity — Right of Corporation to exempt itself by Contract
from Liability to Passenger for Negligence.*

A ticket, given by a railroad corporation to an employee who lives on the line of
the railroad in a place other than the place of employment, entitling him dur-
ing the month for which it is issued to a certain number of rides from one place
to the other, as well when travelling solely for his own pleasure or business as
when going to and from his work, the rate of wages paid to him being the same
as that paid for the same class of work to other employees who are not furnished
with such a ticket, forms part of the consideration by which he is induced to
enter and continue in the employ of the corporation, and is not a mere gratuity.
A railroad corporation cannot, by an express contract, exempt itself from liability
to a passenger for hire for its negligence or that of its servants.

TORT, for personal injuries occasioned to the plaintiff's in-
testate, Cornelius J. Doyle, by the alleged negligence of the
defendant.    Trial in the Superior Court, without a jury, before
*Dunbar*, J., who allowed a bill of exceptions, in substance as
follows.

Cornelius J. Doyle had been for about a year and a half em-
ployed as a clerk in the freight department of the defendant at
Boston.    He was not employed for any stated period, but was
at liberty to quit the employment at any time, and the defend-
ant might discharge him at any time, without breach of contract.
His wages were fixed at a daily rate.    During his employment
and at the time of the injury he lived with his father in
Waltham, and usually went each morning and evening to and
from Boston on the defendant's trains.    His work for the de-
fendant closed each day at six o'clock, and began in the morning
at seven, and he performed no services for the defendant while
riding on its trains, nor outside the freight office.    After six
o'clock on Saturday afternoons he had nothing more to do for
the defendant until Monday morning, and the time in the inter-
val was his.    There was a well known and uniform custom of

the defendant, known to Cornelius J. Doyle, to furnish to its employees who worked at Boston and lived at some other place on the line of the road a ticket in the form hereafter set forth. The rate of wages paid to the defendant's employees for a given class of work was the same, whether the employee resided at the place where he worked or at some other place on the line, and he was furnished with one of the aforesaid tickets. The deceased was given one of these tickets when he began work, and during the whole time thereafter he had been furnished monthly with tickets of this character, and had used them for transportation between Boston and Waltham. Each ticket had sixty-two numbers to be punched, and was good for sixty-two rides during the month for which it was issued. It was conceded that a person holding one of these tickets might ride upon it whether he was going to and from his work or not, and whether or not he was at the time travelling in the service of the company, or solely for his own private interest or pleasure.

The face of this ticket read as follows:

" No. 464 Fitchburg Railroad. Employee's Monthly Ticket. (Not transferable.)    Pass C. J. Doyle, S. F. D., between Boston and Waltham, during the month of September, 1892, unless otherwise ordered. Not good unless countersigned by L. W. Bartlett. Sept. 1, 1892. · John Adams, Gen'l Supt. Countersignature L. W. Bartlett."

On the back of the ticket were the following conditions:

" The person accepting this free ticket thereby and in consideration thereof assumes all risk of accidents, and expressly agrees that the company is not a common carrier in respect to him, and shall not be liable under any circumstances, whether of negligence of its agents or otherwise, for injury to the person, or for loss or injury to the property, of the passenger using this ticket."

On Saturday, September 10, 1892, the deceased left his work at the usual hour, intending to return as usual on the following Monday, and went on the defendant's train home to Waltham, arriving there before seven o'clock. In the evening, after supper, he went to Boston over the defendant's road, solely on a business or pleasure trip of his own, in no way connected with the defendant. At a little before a quarter past ten the same

evening he entered a car of the defendant which left Boston at that hour, and took a seat, to be carried to Waltham. While so returning from this trip to Boston, and riding on said car by virtue of said ticket, which was punched by the conductor, and while in the exercise of due care, another train of the defendant collided with the car in which the deceased was riding, and he received injuries which, after four days, resulted in his death. The collision was caused by the gross negligence of an engineer in the employ of the defendant.

The defendant asked the judge to rule that the acceptance and use of the ticket by the plaintiff's intestate, subject to the conditions on the back thereof, released the defendant from liability for his personal injuries; and that, upon the whole evidence, the plaintiff could not recover. The judge refused so to rule, and ruled that there was sufficient evidence upon which to base a finding for the plaintiff, and made such finding accordingly; and the defendant alleged exceptions.

*G. A. Torrey*, for the defendant.

*G. L. Mayberry & T. F. Carey*, for the plaintiff.

MORTON, J. The defendant concedes that, in view of the decision in *Doyle* v. *Fitchburg Railroad*, 162 Mass. 66, the plaintiff's intestate must be regarded as a passenger; but he contends that, notwithstanding what is there said, the ticket was a gratuity; and he bases this contention principally on the difference between the bill of exceptions in this case and in that. There is a slight difference, it is true, between the two. In the former case the bill of exceptions stated that the tickets were issued only to employees who worked in Boston and lived at some other place on the line of the road, and " without other compensation than that the person receiving the ticket should perform services for the defendant in accordance with the terms of his employment." In this case the words quoted were omitted. In other respects the two bills of exceptions are alike. We think that the difference is not important, and that it fairly may be said in this case, as in that, that the ticket formed part of the consideration by which the plaintiff's intestate was induced to enter and continue in the employment of the defendant, and was not a mere gratuity. The ticket was only given to employees, and not to all of those, but, so far as appears, only to such as worked in Boston and

lived on the line of the railroad in some other place. It had reference therefore to special circumstances attending the performance of services for the company, and the arrangement well may have been regarded as mutually advantageous. By it the defendant was enabled to obtain the services of those who did not live in Boston, and thus to draw its employees from a larger body, subject only to the expense of their transportation, and the plaintiff's intestate was enabled to enter the defendant's employment on equal terms as to wages with those living in Boston. Without speculating as to what the rights of the plaintiff's intestate to the ticket would have been if at any time he had left the defendant's employment before the end of the month, we think it plain, as already stated, that as this case stands the ticket properly cannot be regarded as a gratuity.

The defendant contends, however, that, even if the plaintiff's intestate was not a free passenger, the plaintiff cannot recover because of the stipulation on the back of the ticket, to which the plaintiff's intestate must be presumed, by accepting the ticket, to have assented. In this respect, this case raises a question which it was not found necessary to decide in the former case, and which does not appear to have been directly decided in this Commonwealth. We assume that, if the ticket had been a gratuity, the contract on the back of it would have precluded a recovery, and that it would have made no difference that the negligence was gross. *Quimby* v. *Boston & Maine Railroad*, 150 Mass. 365. *Rogers* v. *Kennebec Steamboat Co.* 86 Maine, 261. *Griswold* v. *New York & New England Railroad*, 53 Conn. 371. How far common carriers may go in contracting to be relieved from the consequences of their own negligence and that of their servants is a matter on which different courts have taken different views, and on which in some instances courts within the same jurisdiction have expressed themselves differently at different times. It is clear that they have not an unlimited power of contract in this respect. A private individual may refuse to transport a person from one place to another unless the latter will agree to assume all risk of injury. But railroad corporations would have no right to insist as a condition of carrying a passenger that he should make such a contract. This arises out of the nature of the service which they undertake. They may pre-

scribe rates of fare and reasonable regulations for the safety of passengers and the conduct of the business in which they are engaged, but if the passenger is willing to conform to these, they cannot insist that he shall accept the risk of accident as a condition of being carried. But the question now is, What is the effect of such a contract voluntarily entered into by a passenger who in other respects occupies the position of a passenger for hire? There is a dictum in this State to the effect that such a contract would not relieve a railroad company from liability for injuries caused by its own negligence or that of its servants ; *Quimby* v. *Boston & Maine Railroad,* 150 Mass. 365, 371; and we think that it must be regarded as settled in this Commonwealth that such a contract in regard to the carriage of goods would not exempt a railroad from liability for its own negligence or that of its servants. *Squire* v. *New York Central Railroad,* 98 Mass. 239, 246. *Grace* v. *Adams,* 100 Mass. 505. *Medfield School District* v. *Boston, Hartford, & Erie Railroad,* 102 Mass. 552, 556. *Hoadley* v. *Northern Transportation Co.* 115 Mass. 304. *Fonseca* v. *Cunard Steamship Co.* 153 Mass. 553, 557. Although the liability of a carrier of merchandise is that of an insurer, and the liability of a carrier of passengers is measured by the highest degree of care which human foresight reasonably will admit of, we see no valid reason for holding that in the former case the carrier cannot be exempted from his own negligence, and that in the latter he may. The object in both cases, as is said in *New York Central Railroad* v. *Lockwood,* 17 Wall. 357, 377, 378, is to secure the utmost fidelity and care in the performance of their respective duties; and this object in the case of the passenger carrier, as in that of the merchandise carrier, can be accomplished more satisfactorily by denying them the right to contract for exemption from liability for their own negligence and that of their servants than in any other mode. The powerful and dangerous agencies usually employed, the absolute control of them which they have, the trust necessarily reposed in them, the compulsion which they might otherwise exercise, and the public nature of their service render the rule, we think, just and reasonable.

The law in England and in some of the States here is otherwise, but the great weight of authority in this country is against

the right of a common carrier to contract for exemption from the consequences of its own negligence or that of its servants. *Grand Trunk Railway* v. *Stevens,* 95 U. S. 655. *New York Central Railroad* v. *Lockwood,* 17 Wall. 357. *Ohio & Mississippi Railway* v. *Selby,* 47 Ind. 471. *Rose* v. *Des Moines Valley Railroad,* 39 Iowa, 246. *Cleveland, Painesville, & Ashtabula Railroad* v. *Curran,* 19 Ohio St. 1. *Annas* v. *Milwaukee & Northern Railroad,* 67 Wis. 46. *Pennsylvania Railroad* v. *Henderson,* 51 Penn. St. 315. *Jacobus* v. *St. Paul & Chicago Railway,* 20 Minn. 125. *Missouri Pacific Railway* v. *Ivy,* 71 Texas, 409. *Carroll* v. *Missouri Pacific Railway,* 88 Mo. 239. *Willis* v. *Grand Trunk Railway,* 62 Maine, 488. *Flinn* v. *Philadelphia, Wilmington, & Baltimore Railroad,* 1 Houst. (Del.) 469, 501, 502. *Kansas City, St. Joseph, & Council Bluffs Railroad* v. *Simpson,* 30 Kans. 645. *Mobile & Ohio Railroad* v. *Hopkins,* 41 Ala. 486. *Louisville & Nashville Railroad* v. *Wynn,* 88 Tenn. 320. *Maslin* v. *Baltimore & Ohio Railroad,* 14 W. Va. 180. *Virginia & Tennessee Railroad* v. *Sayers,* 26 Grat. (Va.) 328. *Orndorff* v. *Adams Express Co.* 3 Bush, (Ky.) 194. *Taylor* v. *Little Rock, Mississippi River, & Texas Railroad,* 39 Ark. 148. *Berry* v. *Cooper,* 28 Ga. 543. *Southern Express Co.* v. *Moon,* 39 Miss. 822. Wood, Railway Law, § 425. See *contra, Peek* v. *North Staffordshire Railway,* 10 H. L. Cas. 473 ; *Mynard* v. *Syracuse, Binghamton, & New York Railroad,* 71 N. Y. 180 ; *Nicholas* v. *New York Central & Hudson River Railroad,* 89 N. Y. 370; *Kenney* v. *New York Central & Hudson River Railroad,* 125 N. Y. 422.

If the question were a new one in New York, it is possible that a different rule might be established from that which now prevails. See *Mynard* v. *Syracuse, Binghamton, & New York Railroad,* and *Nicholas* v. *New York Central & Hudson River Railroad, ubi supra.* In the case of free passengers, it has been held that, since the carrier is not bound to transport them, it may impose such terms short of wilful negligence or injury as it chooses as a condition of carrying them. *Quimby* v. *Boston & Maine Railroad,* 150 Mass. 365. *Rogers* v. *Kennebec Steamboat Co.* 86 Maine, 261. *Griswold* v. *New York & New England Railroad,* 53 Conn. 371. But in the absence of any special contract or stipulation, the carrier is bound to exercise the same

degree of care towards a free passenger as towards a passenger for hire. *Quimby* v. *Boston & Maine Railroad*, and *Rogers* v. *Kennebec Steamboat Co.*, *ubi supra.* So if a passenger insists upon riding, or is required by the nature of his occupation to ride, in a place not provided for passengers, it has been held that the carrier properly may say to him that he must take the risk, however arising. *Bates* v. *Old Colony Railroad*, 147 Mass. 255. *Hosmer* v. *Old Colony Railroad*, 156 Mass. 506. *Robertson* v. *Old Colony Railroad*, 156 Mass. 525. And in the case of merchandise it has been held that the carrier may properly limit its liability in various ways, so long as it does not claim exemption from its own negligence or that of its servants. *Squire* v. *New York Central Railroad*, 98 Mass. 239. *Grace* v. *Adams*, 100 Mass. 505. *Medfield School District* v. *Boston, Hartford, & Erie Railroad*, 102 Mass. 552. *Hoadley* v. *Northern Transportation Co.* 115 Mass. 304. None of these cases support the defendant's contention that, in the case of a passenger for hire who is being transported as such passengers usually are, a railroad company may contract to be relieved from liability for injuries caused by its negligence or that of its servants. The plaintiff's intestate was, as we have already seen, such a passenger, although in the defendant's employ, and the contract on the back of the ticket was therefore invalid so far as it purported to exonerate the defendant from liability for its negligence, or that of its servants.    *Exceptions overruled.*